8   303
32   309
32   312

## J. C. MORELAND, RESPONDENT, *v.* MATTHEW BRADY, APPELLANT, AND GEORGE A. BRADY, DEFENDANT.

WILL—EXTRANEOUS ORAL EVIDENCE ADMISSIBLE, WHEN.—While it is admitted to be the general rule that oral evidence is not admissible to explain or vary the words of a written instrument, there are exceptions and qualifications of the rule, where the force, operation, and construction of the written instrument are concerned. *Falsa demonstratio non nocet* has become a thoroughly established maxim of the law, the practical meaning of which is that however many errors there may be in the description either of the legatee or of the subject-matter of the devise, it will not avoid the bequest, provided enough remains to show with reasonable certainty the intent of the devisor. Extraneous oral evidence is admissible to show the state and extent of the testator's property at the time the will was executed, in order that the court may be placed in the position of the testator at the time and be able to read the will in the light of surrounding circumstances.

IDEM—MISDESCRIPTION OF DEVISED PROPERTY.—Where a will devised to Margaret lot 2 in block 187, and to Esther lot 1 in block 187, and it appeared that the testator had no such lots as 1 and 2 in block 187, but did own lots 3 and 4 in said block: *Held*, that the erroneous part of the description might be rejected and that the remainder was sufficient to identify the property with reasonable certainty.

MARRIED WOMAN RESIDING OUT OF STATE MAY EXECUTE POWER TO CONVEY.
—Where a married woman owns land in this state in her own right and she and her husband reside out of the state, she may, by joining in a power of attorney with her husband, empower another to convey such property.

APPEAL from Multnomah County. The facts are stated in the opinion.

*Dolph, Bronaugh, Dolph & Simon,* for appellant:

The plaintiff has shown no title to any interest which Esther Brennan might have had in the premises described in the complaint; Esther Brennan, being a married woman, could not convey real property by attorney. (General Laws of Oregon, 515, secs. 1 and 2; Hittell's Statutes of California, p. 103, secs. 643, 644; *Dow* v. *Gould & Curry S . M. Co.,* 31 Cal. 646; *Dentzel* v. *Waldie,* 30 Id. 138; *Maclay* v. *Love,* 25 Id. 367; *Matt* v. *Smith,* 16 Id. 533; *Morrison* v. *Wilson,* 13 Id. 494; 3 Washburn on Real Property, 233; *Earle* v. *Earle,* 1 Spence, 347; *Sumner* v. *Conant,* 10 Verm. 9; *Kearney* v. *Macomb,* 1 C. E. Green, 189; *Lewis* v. *Cox,* 5 Harring, 401; *Dawson* v. *Shirley,* 6 Blackf. 531; *Allen* v. *Hooper,* 50 Maine, 373; *Judson* v. *Sierra,* 20 Texas, 365, 371.) Nor does section 15, of title 1, of chapter 6, General Laws, authorize a married woman to convey real estate by power of attorney. This section only relates to the acknowledgment of the deed, and by the terms of the statute itself the wife must join the husband in the conveyance.

Another question is suggested for the consideration of the court: Can a married woman in this state convey the land of another as attorney in fact? Margaret McGill, the attorney in fact of Esther Brennan, was a married woman.

The circuit court in this case attempted what has never been done by any court before, to make a will for a deceased person, or what was just as legally impossible, to hold that the devisees could make a will for their testator, or by agreeing to a division of the testator's property between themselves make a good devise not described in the will, and in a case where the intention of the testator could not be ascertained.

The evidence upon this question may be stated as follows: A block in the city of Portland consists of eight lots numbered and situated as follows:

N.

| 8 | 1 |
|---|---|
| 7 | 2 |
| 6 | 3 |
| 5 | 4 |

Bernard Brady had an equitable title to lots 3 and 4 in
block 187.   He did not own lots 1 and 2 in block 187.   He
devised by his will lots 1 and 2 in block 187, one lot to his
sister Esther and one to his sister Margaret.   It may be
reasonably supposed he intended to devise the lots he owned
and not those he did not own.

Thus far the court can go with safety, and thus far the
authorities go; and, if the two lots had been given to the
two sisters jointly, the court could have corrected the will.
But which lot did the testator intend to give to Esther and
which to Margaret?   There is nothing in this case from
which the least clue to the testator's intention can be ob-
tained, and because there is not, the court can not correct
the will.   A court can only carry out the intention of the
testator, as ascertained from the will, and the condition of
the parties and property.   We understand that the court,
in this case, felt this difficulty and undertook to avoid it,
by saying that as the devisees had appropriated each a lot,
the court would correct the will to conform to their action,
but the fallacy of the proposition is apparent.   It substi-
tutes the acts of the devisees for the intention of the testa-
tor.   In fact, it would be far more reasonable to suppose
that as lot 1 is a corner lot and lot 4 is also a corner lot,
the intention was to give Esther lot 4, instead of lot 3.

While under the maxim *falsa demonstratio non nocet,*
courts will receive evidence to explain a latent ambiguity

arising from facts *dehors* the will, yet the evidence must be such as to leave no doubt as to the intention of the testator. (Redfield on Wills, vol. 1, p. 573, 574, and note, 498, 499, 500, 571, 572, 576, and notes; 1 Greenl. Ev., sec. 290; *Miller* v. *Travers*, 21 Eng. C. L. 290; *Brown* v. *Saltonstall*, 3 Met. (Mass.) 423, 428; *Jackson* v. *Sill*, 11 Johns. 201; *Long* v. *Duvall*, 6 B. Mon. 219; 2 Iredell, 194; *Kurtz* v. *Hibner*, 55 Ill. 514; *Bishop* v. *Morgan*, 82 Id. 352; 36 Iowa, 674.) The only evidence admissible is such as tends to place the court in the same position as the testator, in regard to his property. Extrinsic evidence can not be received to show intention. (1 Redfield on Wills, 496, 497, 499, and note, 500, 539, 540, 621, 622; 1 Johnson Ch. 231; 7 Monroe, 624; 2 A. K. Marsh, 51; 8 Mo. 56; 7 Metcalf, 188; 1 Paige Ch. 291; 8 B. Monroe, 600.)

*Wm. Strong & Sons*, for respondents:

There is no patent ambiguity in this will; it is all plain upon its face. It is only when you come to apply its bequests to the property of the testator, and learn that he never owned, or claimed to own, lots 1 and 2 in block 187, that you are called upon to look over the estate he left to see whether there is among it any property of a similar description to fill the bequests. You then learn that he had in his possession and claimed to own at the time the will was executed, and at the time he died, two, and only two, lots in block 187, not numbered 1 and 2, but 3 and 4. These correspond in description with the property described in the will, in a sufficient number of particulars, to identify them as the property he intended to devise to his sisters. The lots belong to him (he had bought them less than a month before his death), they are in block 187 in the city of Portland, they are all the lots he has, or ever had, in that block, or elsewhere, so far as appears, and in his will he has nowhere disposed of them specifically, unless he intended to do so in the bequests to his two sisters. We are forced to conclude, therefore, that the testator intended Nos. 3 and 4, and you reject the numbers given in the will as an error of description.

There can be no doubt, in any candid mind, that he intended to devise Margaret McGill one of these lots, and Esther Brady (Brennan) the other; and that he did not intend any one else should have either of them, or that they should remain intestate for the heirs, or be left for the residuary legatees. There is nothing to show that he placed different values upon the lots, or that it would not equally satisfy his intention to give either one or the other to either sister.

Summing up what has preceded, the testator has given the two lots that he owned in block 187 to his two sisters. We reject the numbers 1 and 2, because they are a manifest error in description, and apply the devise to lots 3 and 4. He gives both of these lots to his two sisters, and does not intend any one else to have them, or either of them. He may have purposed to give to each a separate lot, but not having used language appropriate to that purpose—in the change which his mistake in the numbers has brought about—the will, which does not express this part of his intention, is the same as if he had not had any such intention, but it does clearly express his intention to give these two lots to his two sisters and to no one else, and, so far, his intention may and should be carried out. This can be done by making them tenants in common of both lots. This contravenes no provision of the will, is equitable, and wrongs no one. The only parties interested are the two sisters; but, as they have divided the property to their own satisfaction, the court will not disturb the division where the only effect will be to turn the property over to persons whom, it is certain, the testator never intended to have it.

Such construction seems allowable under the rule laid down in various works on construction of wills. 1 Red. on Law of Wills (sec. 30 c, subd. 15) gives the rule as follows: "There is no more clearly established rule of construction, than that words or clauses of sentences, or even whole paragraphs, may be transposed to any extent, with a view to show the intention of the testator. It is here said that words and limitations may be transposed, supplied, or rejected; but it must appear, either from the words of the

will, or extrinsic proof, admissible in aid of the construction of the words, that the transposition does really bring out the true intent of the testator, and thus render what was before obscure, clear." (10 Paige, 140.)

Apply this rule to this will, and excluding superfluous words, fill in that which is implied, viz., that the testator intended to describe what he owned, and put the two devises in juxtaposition, and we have this form:

"I give and bequeath a certain parcel of ground, or lots, which I own in the city of Portland, Oregon, viz., lots three and four in block one hundred and eighty-seven, as follows, namely: Lot — to Margaret McGill, and lot — to Esther Brady, my two sisters."

The foregoing can not but be admitted to be exactly according to the intention of the testator, so far as the same is definitely expressed in the will, the description of the lots having been corrected by extraneous evidence as to the state of his property. This amounts to precisely the same thing as if the testator had said, The lots three and four in block one hundred and eighty-seven, which I own, I give and devise, one to my sister Margaret, and one to my sister Esther; or, I give and devise to my two sisters, M. and E., the two lots down in block 187, one to each. If we eliminate from this proposition the words, "one to each," the devisees become tenants in common, owning by fee-simple title one undivided half of both the lots. This title either can at will convert into a separate estate. There is absolutely no difference in the quality of the title they acquire. There is nothing in the will to show that the lots differ materially in value, and the evident intention of the testator is fully carried out.

This mode of obtaining from the will the intention of the testator, seems favored by the doctrine laid down by the highest authority on the construction of wills. (1 Redfield, secs. 6, 32.) "The general rule in regard to repugnancy in the different portions of the will seems to have been established from a very early day, that where there is no fair and reasonable mode of reconciliation, the latest of the con-

tradictory provisions shall prevail. But this rule has not gained universal consent. The more rational, and perhaps more general opinion, at the present day, is, that where the same thing is given in the same will to different persons, they shall take jointly, either as joint tenants, or tenants in common, according to the terms of the devise or bequest. But, of two inconsistent limitations in a will, the latter must prevail." * * * "But the testator having given the same estate to two or more persons, in different portions of his will, it is the same as if all the names had been united in one gift of the same estate." * * * (Id. sec. 32.) " But courts will, if possible, adopt such a construction as will uphold all the provisions of the will. And in carrying this purpose into effect, it is permissible to resort to any reasonable intendment; and, if necessary, the relative order of devises or bequests will be reversed, as where an estate is first given to A., and then for life to B. The American courts seem generally to have adopted the rule, in the construction of wills, that where there is an irreconcilable repugnancy in different portions of the instrument, and the difficulty is not relieved by any of the other rules of construction applicable to the case, and both can not operate, the latest shall prevail over that which is earlier in time." * * * (Id. sec. 32, note 24, and authorities there cited.)

When two persons each have the right to either one of two specific things, it may perhaps be called a repugnancy; while if one person had the right to one of two specific things, it would create an ambiguity only. But in case one had the preference and selection by law, there could be no ambiguity. Upon this point we refer to a single case, which, though ancient, will commend itself to the court, for its brevity, at least: "It will here be noticed that when a testator gives to a legatee one or more out of several specific things, the legatee has an absolute right of selection." (2 Coll. 435, 441, quoted from 1 Roper on Legacies, 316.)

It is apparent that, in the case now before the court, one of these parties under this rule has the selection. It is not necessary for the court to determine which one, for the par-

ties have divided by agreement—and this division concerns no one but themselves. Neither can say that she has not made the selection. "When the general intent of the testator is clear, and it is impracticable to give effect to all the language of the instrument, expressive of some particular or special intent, the latter must yield to the former." * * * (1 Redfield on Wills, 433; 9 Paige, 187; 35 Penn. St. 393; 4 Jones Eq. 203; 5 Harring, 91; 8 Mass. 3; 11 Id. 528.

By the Court, BOISE, J.:

This appeal is taken from a decree rendered by the circuit court for the county of Multnomah, in favor of the respondent and against the appellants. The suit was brought to quiet the respondent's possession and title to lot number three in block one hundred and eighty-seven, in the city of Portland, against Matthew Brady and George Brady, who sues by his guardian, James Wilson. The appeal is taken alone by Matthew Brady. The parties all claim to derive title from one Bernard Brady, late of Multnomah county, deceased.

The facts established by the evidence are as follows:

1. That Bernard Brady made his will on the twenty-ninth day of October, 1862, and died at the city of Portland, Oregon, on the thirty-first day of October, 1862. It was admitted to probate in the county court of the county of Multnomah on the seventh day of November, 1862, and his estate has been duly administered upon.

2. The fourth clause of his will is, so far as is material, as follows: "As also a certain parcel of ground or lots in the city of Portland, and numbered as follows, to wit: No. block, 187, one hundred and eighty-seven, lot No. (2) two, I bequeath to Margaret McGill."

3. Sixth clause of will: "I also bequeath to my sister Esther Brady, that lot or parcel of ground, in the city of Portland, as here described, lot No. (1) one, in block (187) one hundred and eighty-seven—otherwise its value."

4. Twelfth clause of will: "The remainder of my estate and effects I bequeath to be equally divided between my

brother, Matthew Brady, and Margaret McGill, and George A. Brady, orphan child of John Brady, deceased."

5. That Bernard Brady did not, at the time he made his will or died, or ever, own, or claim to own, or have any interest in, lots 1 and 2 in block 187, or either of them, but did, at the time he made his will, and when he died, own lots 3 and 4 in the same block by an equitable title derived from Jasper W. Johnson, under an instrument in writing, dated October 4, 1862, executed and acknowledged by the said Johnson and his wife, and in all respects a perfect deed, except that no seals were affixed to the grantors' signatures.

6. That, on the nineteenth day of March, 1878—during the pendency of this suit—for a nominal consideration, and on purpose to correct the alleged error of the want of a seal in the preceding deed, and upon the representation of Matthew Brady, this defendant and appellant, that he, the said Matthew Brady, was the sole heir of the said Bernard Brady, and the *bona fide* owner of the premises, the said Johnson and his wife duly executed a good and sufficient confirmatory deed to the said Matthew Brady of said lots 3 and 4 in said block 187.

7. The respondent introduced in evidence a power of attorney, executed in Ireland by Esther Brennan and her husband, John Brennan, to Margaret McGill; and a deed from Esther Brennan and John Brennan, her husband, by Margaret McGill, attorney in fact to James N. Lyon, and a chain of conveyances from Lyon to respondent, and offered in evidence a certified copy of the will of Bernard Brady, and probate thereof.

One of the witnesses signs by making his mark. The signature of Bernard Brady and the attestation of the witnesses are as follows:

| Witness | His |
|---|---|
| The signature, | BERNARD X BRADY. |
| PATRICK MACKEN. | Mark. |

The above instrument of three pages was now here subscribed by Bernard Brady to be his last will and testament, and he then acknowledged to each of us that he had sub-

scribed the same, and we, at his request, signed our names hereto as attesting witnesses.

> PATRICK BRADY,
>> Residing at Portland, Or.
>> His
> DANIEL X McGILL,
>> Mark.
>> Residing at Portland, Or.

Witness to this will and testament of Bernard Brady,
> . PATRICK MACKEN.

It is claimed by the appellant that the will of Bernard Brady is void, because it appears that he signed it by making his mark, and that some other person signed his name to the same without stating that he signed the testator's name at his request, and as a witness, as required by the statute of Oregon. The manner in which the will was signed by the testator, and attested by the subscribing witnesses, was in substantial compliance with the requirements of the statute in that respect, as was held by this court in *Pool* v. *Buffum* (3 Or. 438), to which we refer as decisive of this point.

But it is further claimed that the devise is void on account of a false description of the lots intended to be devised, and that no parol evidence is admissible in aid of its construction. While it is conceded to be the general rule, that oral evidence is not admissible to explain or vary the words of a written instrument, there are so many exceptions and qualifications of the rule, that no case is tried where the force, operation, and construction of a written instrument are concerned, that oral evidence is not received in aid of its construction. The rule excluding oral proof in explanation of written instruments, applies to the language of the instrument, and not to its import or construction. (1 Greenleaf Ev. sec, 277.) But the written instrument "may be read in the light of surrounding circumstances," in order to more perfectly understand its true meaning.

It is very common "to receive oral proof to show that language was used in a peculiar sense, or that one term was used for another; or that an essential term, to make the defi-

nition perfect, was wholly omitted or erroneously stated. These corrections are every day made by courts in fixing the construction of wills and other written instruments, by aid of extraneous evidence in regard to the state and condition of the subject-matter of the devise or of the devisee, in regard to one or the other."

Wills are frequently made during the last sickness of testators, and they too often depend wholly upon memory for description of their lands, and in consequence they are liable to great indefiniteness and occasional error. And on looking into the many cases decided, we find that courts have for a long period of years been compelled to deal with these descriptions in a very lenient manner, in order to reach the true intent of the testator "where that seemed practicable by the act of construction, and by the admission of oral evidence to remove latent ambiguities."

Mr. Redfield says: "One rule upon the subject is so thoroughly established as to have become a maxim in the law, *Falsa demonstratio non nocet.* The practical meaning of which is, that however many errors there may be in description, either of the legatee or of the *subject-matter* of the *devise,* it will not avoid the bequest, provided enough remains to show with reasonable certainty what was intended." (Redfield's American cases upon the law of Wills, 544; *Roman Catholic Orphan Asylum* v. *Emmons,* 3 Bradf. Sur. R. 144; *Jackson* v. *Sill,* 11 Johns. 201–218; 1 Redfield on Wills, 580.)

Then we apprehend there can be no question of the admissibility of extraneous oral evidence to show the state and extent of the testator's property, in order to place the court in the same position the testator was in at the time he made the will in question. This, we think, is unquestionably the rule established by the decided cases. This being done, it appears that the testator had no such lots as those described as lots 1 and 2 in the particular block named. This renders it certain that the lots named were erroneous, and the words describing them can have no possible operation, and must be rejected. The devise is the same as if the numbers of the lots had not been mentioned at all or

had been named and the numbers left blank. We are then compelled to fall back upon the remaining portion of the description, to wit: "A certain parcel of ground or lots in the city of Portland in block No. 187;" also "that lot or parcel of ground in the city of Portland in block 187." And by thus placing ourselves in the position of the testator, by oral evidence, at the time of the execution of his will, we find that there were two lots or parcels of ground in the city of Portland, and in block 187, belonging to the testator at that time and also at the time of his death. This renders the devise entirely certain from the language of the will as to the intention of the testator. The description would have been sufficient by merely naming the block and city in which the lots or land lay without specifying the numbers of them. The testator could not have intended to devise lots to which he never had any title, but must have intended to devise those which did belong to him. He had two just such lots or pieces of land as he names, and every way described as these are, with the single exception of this one false particular, and this is the very kind of case to which the maxim *falsa demonstratio non nocet* applies. (*Allen* v. *Lyons,* 2 Wash. C. C. 475; *Winckley* v. *Kaine,* 32 N. H. 288; *Myers* v. *Riggs,* 20 Mo. 239; *The Domestic and Foreign Missionary Society's Appeal,* 30 Penn. St. 425; *Button* v. *The American Tract Society,* 23 Vt. 336.) In *Winckley* v. *Kaine, supra,* the devise was of "thirty-six acres, more or less, of lot thirty-seven in the second division of Barnstead," and it appearing that there was no such lot in that division, but that the testator owned land in lot ninety-seven in that division, it was held to pass under the will. In *Allen* v. *Lyons, supra,* the devise was of a house and lot in Fourth street, Philadelphia. But it appeared on oral proof admitted by the court that the testator had no such property in Fourth street, but did own a house and lot in Third street, and it was held to pass under the devise.

While it is admitted that the court might go thus far in safety under the authorities, it is claimed that the devise can not be sustained because it can not be ascertained from the language of the will which lot the testator intended to

give to Esther, and which to Margaret. To this we answer that it does appear that he intended to give each one a lot, and the evidence disclosing that there was no particular difference in the situation and relative value of the lots, it may be presumed that they took them in common; that each was to have an interest in both lots. And the sisters having amicably arranged between themselves as to which lot each one would take, we are unable to see which interest the appellant had in that matter.

But it is further claimed that respondent has failed to show title to any interest which Esther Brennan might have had in the premises described in the complaint, for the reason that she, being a married woman, could not convey real property by an attorney in fact. It appears in evidence that a power of attorney was executed in Ireland by Esther Brennan and John Brennan her husband, to Margaret McGill, fully authorizing her in their names to convey her title to the property in question. Said power of attorney being duly acknowledged by Esther Brennan and her husband before an officer with authority to take such acknowledgments, also a deed from Esther Brennan, and John Brennan, her husband, executed in their names by the said Margaret McGill, their attorney in fact, to James N. Lyons, which deed constitutes a link in the chain of respondent's title. The question presented is that Esther Brennan, being a married woman, could not convey her interest in the property through an attorney, notwithstanding her husband joined with her in the execution of such power. Misc. Laws, p. 515, c. 6, tit. 1, sec. 2, provides that "a husband and wife may by their joint deed convey the real estate of the wife in like manner as she might do by her separate deed, if she were unmarried."

The California statute contains a section like this, and the courts there hold that a married woman can not invest another with power to convey any interest she may have in real estate in the absence of any statute to that effect. Section fifteen of our statute provides that "when any married woman, not residing in this state, shall join with her husband in any conveyance of real estate situated within this

state, the conveyance shall have the same effect as if she were *sole*, and the acknowledgment or proof of the execution of such conveyance by her may be the same as if she were *sole*." The California statute had no such section as this.

Thus it will be seen that under this section Esther Brennan and her husband, residing out of the state, could have joined in the execution of a deed to the property in question, which would have been sufficient under the law to convey any right she had therein. In this state there is no statute prohibiting a married woman with investing another with power to convey any interest she may have in real estate; and we are unable to see any good reason why the section above referred to should be construed to have that effect; and especially when we take into consideration that the tendency of modern legislation and modern decisions is to remove the disabilities imposed by the common law upon married women.

Entertaining the views herein expressed, it follows that the decree of the court below should be affirmed.