Argued March 29, affirmed April 6, 1915.

## ROELFS' COUSINS *v.* WHITE.

(147 Pac. 753.)

**Wills—Construction—Intent.**

1. The rule in the construction of a will is that the purpose is to discover the intention of the testator.

**Wills—Construction of Devise—Gift to Class—"Between."**

2. A testatrix who did not know how many cousins she had nor where they resided, but who knew that she had some, and who knew the names of the sisters of her deceased husband, as well as the name of a daughter of his deceased brother, devised the residue of her estate to her cousins, with direction as to the person from whom their names might be learned, and to the sisters of her deceased husband and the daughter of his brother, all by name, share and share alike between such cousins and the named devisees; the children of a deceased devisee to take by representation. *Held,* that the word "between" properly refers to two and no more, and that the residue was devised for equal division between the cousins as a class and the other devisees as a class.

[As to who entitled to take under devises and bequests to a class, see note in 73 Am. St. Rep. 413.]

From Multnomah: THOMAS J. CLEETON, Judge.

Department 2.    Statement by MR. JUSTICE EAKIN.

This is a proceeding instituted by the cousins of Mary Roelfs, deceased, against Mary Ann White, Jane Chambers, Ellen Jackson and May Ellen Jackson, sisters and relatives of Thomas Jackson, second husband of said Mary Roelfs, deceased, relating to the distribution of the estate of said decedent.

The deceased left a will, the twenty-sixth section of which is as follows:

"The rest and residue of my estate I give and bequeath unto my cousins, the names of whom may be learned by writing to Frank C. Duffy, 239 Hammond Street, Bangor, State of Maine, and the sisters of my second husband, Thomas Jackson, who are living somewhere in Brooklyn, State of New York, and the names of whom are Mary Ann White, Jane Chambers, Ellen Jackson, and May Ellen Jackson, the daughter of David Jackson, a brother of my deceased husband, to be divided share and share alike between my said cousins and the sisters of my deceased husband and the said May Ellen Jackson; and if any of said legatees are deceased, the children of such deceased are to take the share of their ancestors."

In the settlement of the estate the question arose as to the division of this residue, whether these legatees should take *per capita* or *per stirpes;* the cousins claiming that it should be divided into as many parts as there were cousins and sisters and daughters of the deceased brother, each to take one share, and the others contending that it should go one half to each class.    The testimony of Judge McGinn, who drew a former will with substantially the same clause, of Mr. Woerndle, who drew the will in question, and of E. P. Murphy, was taken.    This testimony was objected to

as tending to change the will by parol.    After hearing
the case the court below held that the property should
be divided equally between the two classes, without
regard to the number in either.    From this decree the
cousins appeal.                                    AFFIRMED.

For appellants there was a brief over the names of
*Mr. H. B. Adams, Mr. William A. Munly* and *Mr.
William Schellbach,* with an oral argument by *Mr.
Adams.*

For respondents there was a brief over the names of
*Mr. C. T. Haas* and *Mr. John L. Childs,* with an oral
argument by *Mr. Haas.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. It is a familiar and undisputed rule in the con-
struction of a will that the purpose is to discover the
intention of the testator: *Kaser* v. *Kaser,* 68 Or. 153
(137 Pac. 187) ; *Ramsey* v. *Stephenson,* 34 Or. 408 (56
Pac. 520, 57 Pac. 195) ; *Gerrish* v. *Hinman,* 8 Or. 348.

"The rule excluding oral proof in explanation of
written instruments applies to the language of the in-
strument, and not to its import or construction: 1
Greenleaf, Ev., § 277.    But the written instrument
'may be read in the light of surrounding circum-
stances,' in order to more perfectly understand its
true meaning": *Moreland* v. *Brady,* 8 Or. 303 (34 Am.
Rep. 581.)

"It has been justly observed," says Judge WERNER
in *Estate of King,* 200 N. Y. 189 93 N. E. 184, 21 Ann.
Cas. 412, 34 L. R. A. (N. S.) 948), "by some jurist pos-
sessed of philosophical perception, 'that no will has
a twin brother.'    This sage epigram points directly
at the difficulties encountered by courts in trying to
construe wills in the light of authority.    These troubles
are nowhere more cogently illustrated than in Mr. Jar-

man's Standard Treatise on the Law of Wills, where one may find authority for almost any proposition which the exigencies of a given case may suggest or demand.''

This is well confirmed by the briefs of the parties in this case, where industrious counsel have cited hundreds of cases, many of which are diametrically opposed to each other. We cite only a few. The case of *Kelley* v. *Vigas,* 112 Ill. 242 (54 Am. Rep. 235), is one wherein a testator devised all his estate to his wife during her life, and after her death directed that $1,000 be paid to his daughter, and gave to his daughter-in-law, the widow of his deceased son, a lot, and then directed ''the remainder of my estate to be divided equally among my heirs at law.'' The widow was dead when a partition was asked, and it appeared that the testator had but two children, a daughter still living, and a son who died before the testator, leaving children. It was held in this case that the heirs took *per stirpes,* and not *per capita,* in the remainder of the estate, so that the daughter took one half and the heirs of the son the balance. In *Ihrie's Estate,* 162 Pa. 369 (29 Atl. 750), the court held:

''The testatrix wrote: 'The residue of my estate is to be divided between my husband's grandchildren and the children of Ferdinand Poree.' * * The word 'between' refers properly to two, and not more. It is true that it is not infrequently used, especially by the uneducated, and colloquially, in the sense of 'among,' as referring to more than two objects. But that admittedly is not its correct use. * * On a general view of the whole will we see no ground on which it gives the word 'between' any other than its proper meaning, and according to that the grandchildren of General Ihrie are one class, taking half, and the children of

Ferdinand Poree another class, taking the other half, of the residuary estate.''

In the case of *Stoughtenburgh* v. *Moore,* 37 N. J. Eq. 63, the clause to be construed was:

''All the * * residue of my estate, real, personal, and mixed, I give, devise, and bequéath the income to my two sons Robert and Edward, to be equally divided between them during their lives, and at their death, to be equally divided between my grandchildren, to them, their heirs and assigns.''

The court held that this residue going to the grandchildren went in classes, and the grandchildren took *per stirpes,* and not *per capita,* saying:

''The language is, 'and at their death to be equally divided between [not among] my grandchildren.' The word 'between' is commonly used in reference to two only, and there is some evidence in the use of the word here of the intention to divide between two families of children.''

In *Holbrook* v. *Harrington,* 82 Mass. (16 Gray) 102, the clause to be construed was:

''To be equally divided between the heirs of my late husband and the heirs of my brothers and sisters.''

The court held that this gave one half to the heirs of her husband and the other half to the heirs of her brothers and sisters. This case is very much in point and gives great light in construing the will in question. In *Talcott* v. *Talcott,* 39 Conn. 186, the testator had two daughters, A. and B., of whom A. had two children, C. and D. A deceased daughter, E., of the testator's widow by a former husband, who had been a member of the testator's family, had five children, F., G., H., I., and J. The will contained the following provisions:

"I give to A. C., and D., and all the children born of A.'s body, and I also give to B., and all the children born of her body, and I also give to all the children of E., deceased, namely, F., G., H., I., and J., being all the children of E. all the income of my real estate to be equally divided among the above-mentioned heirs."

The court held the beneficiaries in the will took as classes; each class taking one third of the estate. In *Lockwood's Appeal*, 55 Conn. 157 (10 Atl. 517), the clause of the will to be construed was:

"To be equally divided between said children to wit, of said J. and * * M., and to belong to them and their heirs forever."

J. was a nephew and M. a niece, and the children differed in number; but the court held that they took *per stirpes*, and not *per capita.*

In *Records* v. *Field*, 155 Mo. 314 (55 S. W. 1021), the clause in question was:

"The balance of my property in money I want equally divided between the heirs of W. and J., deceased."

W. and J. were brothers of the testator, both deceased at the date of the will. Three children and four grandchildren of W. and two children of J. were living at the date of the will, and survived the testator. It was held that they took *per stirpes*, and not *per capita,* and that the estate was divided into equal parts to be distributed among the heirs of these two people. In *Young's Appeal*, 83 Pa. 59, the clause to be considered was:

"I will the residue of my estate, real, personal and mixed, to my beloved wife, Alcy, for and during her life; and, further, I will that at her decease, such moneys or property as she may possess be equally divided

between her relations and mine, or such of them as she may believe most worthy.''

In discussing this case the court say:

''What, then, does the language of this will indicate to be the intention of the testator? After the expiration of the life estate of his wife, he directs the property to 'be equally divided between her relations and mine.' He and his wife were childless. There was no issue of either to whom the property could be transmitted. It may have been the joint product of their industry and economy. This or some other moving cause prompted him to direct that the property be 'equally divided' between families of different blood. The language clearly points to one general division—one separation of the fund. Two classes were in his mind. One class was his relations; the other class was his wife's relations. The property was to be equally divided 'between' these two classes, and each class to take one-half—his relations one-half; his wife's relations the other half. Neither the language nor the spirit of the will indicates that each relation should have an equal share. To reach such a result would require all the relations of each, the testator and his wife, to be thrown together in one class, regardless of their relative number. So, if the wife had 20 and the testator two, her relations would take ten times as much as his relations. That would be a most manifest disregard of the direction for an equal division between the two families.''

2. Keeping in mind the definitions these authorities give as to the word ''between,'' we find the testator did not know how many cousins she had nor where they resided, but she did know that she had some. She knew the names of the sisters of her deceased husband, as well as the name of the daughter of his deceased brother. She had in mind these two classes, and we believe she intended to divide this residue between these classes equally.

These views lead to the affirmance of the decree; and it is so ordered. This being the clause of a will which both parties are anxious to have interpreted, no costs will be allowed.                              AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE HARRIS concur.