LEFEAVRE *v.* PENNINGTON.

4-9222                                                230 S. W. 2d 46

Opinion delivered June 5, 1950.

*Harry T. Wooldridge,* for appellant.

*Harwell & Boston* and *Jay W. Dickey,* for appellee.

GEORGE ROSE SMITH, J.   This is a proceeding insti-
tuted by the executor of the will of Dr. J. W. Pennington,
to obtain a construction of the residuary clause. This
clause reads: ''The Bal. to be divided equally between
all of our nephews and nieces on my wife's side and my
niece, Nathalee Pennington, of Lawrenceburg, Ten-
nessee.'' The trial court construed the will as giving
half the residuary estate to the appellee, Nathalee Pen-
nington. The twenty-two appellants, who are the tes-
tator's nephews and nieces on his wife's side, contend
that the property should be distributed equally among
all the beneficiaries, so that the appellee would receive
a twenty-third instead of a half.

We agree with the trial court's conclusion. To begin
with, the testator used the word ''between,'' which in its
literal sense applies to only two objects, as ''between
Scylla and Charybdis.'' If the reference is to more than
two the preposition should be ''among.'' Webster's New
International Dictionary. In several cases the courts
have stressed this distinction in holding that language
such as that now before us contemplates a division of the

legatees into two classes. *In re Moore's Estate*, 157 Pa. Super. 296, 43 A. 2d 359; *Roelf's Cousins* v. *White*, 75 Ore. 549, 147 P. 753.

It is probably true, however, that most people do not habitually observe the distinction between the two words. For that reason we do not rest our decision on this point alone but prefer to treat this as a case of ambiguity. We may therefore look to the state of the testator's feelings toward the various beneficiaries as an aid in arriving at his intention. *Rufty* v. *Brantly*, 204 Ark. 32, 161 S. W. 2d 11. There was testimony showing that Dr. Pennington had a warm affection for Nathalee. The two wrote to each other often, and he had visited in her home in Tennessee. Dr. Pennington had sent Nathalee various gifts, including a fountain pen, a $500 United States bond, and $10 a month when she was ill for five months. At the trial Nathalee described herself as her uncle's favorite niece.

This evidence confirms our belief that Dr. Pennington meant for half of his residuary estate to go to Nathalee and for the other half to be divided among the appellants. It is not without significance that Dr. Pennington described the appellants merely as a class, apparently not caring whether the class increased or decreased in number before his own death. Nathalee, on the other hand, was singled out for individual mention. This different treatment may well have been due to the fact that Dr. Pennington did not entertain for each of the twenty-two appellants the same close affection that he had for Nathalee.

Finally, a per capita distribution among all twenty-three litigants would be a somewhat unnatural division of the estate. Many men feel that property acquired during marriage belongs jointly to the husband and wife, no matter which one holds the legal title. Consequently it is not at all unusual for a childless widower to divide his estate equally between his own family and that of his wife. We think it much more likely that Dr. Pennington intended such a division than that he meant to give twenty-two twenty-thirds to his wife's relatives and only

one twenty-third to his own kin. Thus the literal meaning of the language, the state of the testator's affections, and a natural distribution of the estate all point to the construction adopted by the trial court.

Affirmed.

HOLT and DUNAWAY, JJ., dissent.

EDWIN E. DUNAWAY, J., dissenting. I dissent because I think the majority by insisting upon the strict etymological meaning of the word "between" is defeating the intent of the testator as to the disposition of his property.

It is true that that eminent legal authority, Webster's New International Dictionary, says that in its literal sense "between" applies only to two objects, and the example quoted in the majority opinion is given as illustrative. In the same authority, however, the word "among" is given as a synonym for "between," and we find this statement: "When used of more than two objects, it brings them severally and individually into the relation expressed; as, a treaty *between* three powers; the three survivors had but one pair of shoes *between* them."

The great weight of authority recognizes that in common parlance "among" and "between" are used interchangeably. "In popular usage no distinction is made between the words 'between' and 'among'; both being used without regard to the number involved. This confusion of meaning frequently appears in wills, and effect is given to testator's actual intention." 3 Page on Wills (3rd Ed.) § 1084, p. 295. Again in an annotation in 75 A. L. R. 831, where the cases are collected, it is said:

"Where the gift is to a named individual and a number of persons by general description, as in the case of a gift to A and the children of B, and the question arises whether A is a member of the class, or where the gift is to the children of A, B, and C, and the question arises whether the legatees constitute a single or a composite class, some doubt may arise from the testator's use of the word 'between' in a direction to divide. The courts,

however, have settled that such use is of little signif-
icance, as the word 'between' may be, and frequently is,
used in the same sense as 'among'.''

See, also, *Thompson, Construction of Wills*, § 229, p. 372.

In *Graves* v. *Graves*, 55 Hun 58, 8 N. Y. S. 284, the
court said in discussing this problem: ''Criticism is made
upon the use of the word 'between,' and not 'among', in
the direction for division in the case at bar. It is true
that in very strict use of language the preposition 'be-
tween' is more properly employed where the reference
is to two persons or things only; and 'among', where the
reference is to more than two. But the distinction is too
nice to furnish a rule of construction, and it is known to
all that 'between' is very commonly used as synonymous
with 'among' in such connection.''

The will in question was a holographic will, prepared
by a layman and not a lawyer versed in legal niceties.
The testator said of his estate, ''The Bal. to be divided
equally between all of our nephews and nieces on my
wife's side and my niece Nathalee Pennington . . .''

The problem of construction presented by thus desig-
nating a class of legatees and then naming an individual
is discussed in 3 *Page on Wills*, (3rd Ed.) § 1083, p. 292:

''If the gift is to one or more named or designated
persons who are to take together with a class, the ques-
tion arises whether or not such named persons take each
a share, and the class takes a share, on the one hand; or
whether such named persons are intended to be members
of the class, so that such persons and the members of
such class will each take the same amount, on the other.
If testator intends to make them members of the class,
the gift is one to a class.

''It is said that it will be assumed, in the absence of
anything in the will to show a contrary intention, that
testator intended to make such named person a member
of the class, and to divide the gift between the members
of the class as thus constituted, per capita.''

It must be recognized that the courts encounter interminable difficulties in trying to construe wills in the light of authority. As said in *Roelf's Cousins* v. *White,* cited *supra* in the majority opinion, "These troubles are nowhere more cogently illustrated than in Mr. Jarman's Standard Treatise on the Law of Wills, where one may find authority for almost any proposition which the exigencies of a given case may suggest or demand." That seems to be true in the instant case.

What then does the record reflect as to the testator's feelings toward the various beneficiaries as an aid in arriving at his intention? It is from the testimony of Nathalee Pennington herself that the majority finds a "warm affection" toward her on the part of the testator and hers is the only testimony that she was her uncle's favorite niece. Dr. Pennington left Tennessee, where Nathalee lives, in 1900 and has lived in Arkansas since. After her early childhood Dr. Pennington saw her only twice—once during his wife's lifetime and once during a visit to Tennessee, after Mrs. Pennington's death. From his wife's death until he died, the testator lived with a sister of his wife, Mrs. Anderson. Some of the legatees are children of this sister, and some the children of other brothers or sisters. (How many branches of Mrs. Pennington's family there were is not shown by the record.) A son of Mrs. Anderson was named executor without bond, and the will provided that as to sale of decedent's property this nephew's "judgment be final in all matters."

The fair inference from all of this is that the testator was much closer to his wife's family here in Arkansas than to his own which he left in Tennessee many years ago. Certainly the testimony of Nathalee, who stood to take one-half the estate instead of one twenty-third, about her favored position might have been somewhat colored by interest. Nor does the argument impress that since Nathalee's four brothers were left nothing, the testator must have meant for her to share in half the property. A more reasonable view, it seems to me, is that the testator wanted certain of "our" nephews and nieces as a

class to have his property. Which ones?—all of his wife's and only one of his. In his brief holographic will, instead of listing the twenty-two names of all his wife's nieces and nephews, he designated them as a class, and to that class added the one of his own relatives he desired to include; and provided that between them his property should be "divided equally."

The judgment should be reversed.

Mr. Justice HOLT joins in this dissent.