Argued January 11; decided February 7, 1898.

## PORTLAND TRUST COMPANY *v.* BEATIE.

[52 Pac. 89.]

WILLS — CONSTRUCTION OF DESCRIPTION.— Under the rule that an erroneous statement of the location of property intended to be devised will not affect an otherwise definite description, an irregular shaped tract of unplatted, wild, unimproved and uninclosed forest land, containing 160 acres in one body in the northeast part of a particular land claim, bounded on the north and east by the claim line, and on the other sides by the platted portion of the claim, passes under a will devising all that part of the land claim "not laid off into lots and blocks and lying in the northeasterly portion of said claim, containing 85 acres, more or less." It is not a reasonable construction to hold that only 85 acres was devised; it is evident that the entire unplatted portion was referred to.

From Clackamas:   THOS. A. McBRIDE, Judge.

Action of ejectment by the Portland Trust Company of Oregon against Robert B. Beatie, which resulted disastrously, and this appeal followed.

AFFIRMED.

For appellant there was a brief over the names of *Williams, Wood & Linthicum,* and *Rodney L. Glisan,* with an oral argument by *Mr. Stewart B. Linthicum* and *Mr. Glisan.*

For respondent there was a brief over the names of *Bailey & Balleray* and *C. D. Latourette,* with an oral argument by *Mr. Cyrus A. Dolph* and *Mr. John J. Balleray.*

MR. JUSTICE BEAN delivered the opinion.

This is an action brought by the successor in interest of the heirs of Daniel Harvey, deceased, to recover

possession of certain real property known as "Beatie's Addition to Oregon City," being a part of the Oregon City land claim not laid off into lots and blocks by Dr. John McLoughlin prior to the act of congress of September 27, 1850. This claim was settled upon and had been occupied and improved by Dr. McLoughlin for many years prior to the donation law, but the portion thereof not sold by him prior to March 1, 1849, was by such act granted to the territory of Oregon for university purposes; but in 1862 the title of the state was confirmed and conveyed to the legatees of Dr. McLoughlin, he having in the meantime died, leaving a will, in which he devised and bequeathed all of his property in Oregon to his son, David McLoughlin, his daughter Eloisa, and to her husband, Daniel Harvey, in equal shares. On May 20, 1859, David McLoughlin conveyed his interest in the estate to his brother-in-law, Daniel Harvey, so that by virtue of the act of the Oregon legislature of October 11, 1862, the title to a one third interest in the unsold portion of the Oregon City claim vested in Eloisa Harvey, and the remaining two thirds in her husband, Daniel Harvey. In 1868, Daniel Harvey died leaving a will, the second clause of which is as follows: " Second. Whereas, under the last will and testament of Dr. John McLoughlin, of which I am the sole executor, my beloved wife, Eloisa Harvey, the daughter of said Dr. John McLoughlin, was entitled in her own right to an undivided one third part of all his real estate in the State of Oregon, and as and for the divided interest in and to all the unsold real estate to which she was so entitled, she fully consenting

thereto, I hereby formally give and devise to my said beloved wife, Eloisa Harvey, to be held by her as her sole property, in her own name and right, all and singular the following described real estate, that is to say." Then follows an enumeration of divers and sundry lots and blocks which do not include or affect the property in controversy "all in Oregon City, in the County of Clackamas, in the State of Oregon, according to the plat of said Oregon City as laid off by Dr. John McLoughlin, now deceased, and filed in the county clerk's office of the said Clackamas County; and also all that part of the Oregon City land claim not laid off into lots and blocks, and lying in the northeasterly portion of said land claim, and containing eighty-five acres, more or less; and also all of one half section of land situated near Davidson's landing, in Marion County, State of Oregon, more particularly described as in notification," etc.

By the third, fourth, fifth, sixth, seventh and eighth clauses of the will the testator devised to the children and stepchildren divers and sundry of the described lots and blocks in Oregon City according to the plat thereof as laid off by Dr. McLoughlin. The ninth, tenth and eleventh clauses are not pertinent to any issue in this case. By the twelfth the testator gave to his wife $10,000 in coin, to be accepted and received by her in lieu of dower, and the thirteenth and last clause, excepting the one appointing an executor, reads as follows: "Thirteenth. I give, devise and bequeath unto my said beloved wife, for and during her natural life, so long as she remains single, the same also to be accepted and received by her in lieu of

dower, subject to the payment of all lawful debts, taxes and adjustments thereon, the absolute use and control of all the rest and residue of my property, real, personal and mixed, whatsoever and wheresoever, for her comfort and support, and for the support and education, in her discretion, of our said beloved children, Daniel Harvey, Mary Angeline Harvey and James William McLoughlin Harvey, during their minority, and to be divided equally between them, or the survivors of them, upon the decease of my said beloved wife." Both parties to this litigation claim title to the property in dispute under this will. The only question in the case is whether it passed under the second or the residuary clause.

At the time the will was executed a portion of the Oregon City land claim had been laid off into lots and blocks, leaving an irregular shaped tract of wild, unimproved, uninclosed forest land, containing 159.75 acres, lying in one body on the north and east sides of the claim, and bounded on the north and east by the claim line, and on the south and west by the platted portion thereof. The position of the plaintiff is that the testator devised to his wife by the second clause of the will only 85 acres of the unplatted part of the claim in the northeasterly portion thereof, and, as the property in dispute would not be included in such a tract of land, and is nowhere else mentioned in the will, it passed under the residuary clause; while the defendant contends that the whole unplatted part passed to the wife under the second clause, and that the statement in the description that it was situated in the northeasterly portion of the claim, and con-

tained 85 acres, more or less, is in fact an error, and does not impair the precedent particular description. The whole controversy between the parties, therefore, hinges on the interpretation to be given to that provision in the will by which the testator devised to his wife "all that part of the Oregon City land claim not laid off into lots and blocks, and lying in the northeasterly portion of said claim, and containing 85 acres, more or less."

The intention of a testator, as expressed in his will, is, of course, the controlling factor in its construction, but there are certain elementary rules or guides which are considered valuable to aid in arriving at such intention. Among these, are that a precedent particular description is not to be impaired by a subsequent general description or reference, and that words of reference or explanation never destroy a specific grant: *Melvin* v. *Proprietors of Locks*, 5 Metc. (Mass.) 15 (38 Am. Dec. 384); *Hathorn* v. *Hinds*, 69 Me. 326; *Maker* v. *Lazell*, 83 Me. 562 (23 Am. St. Rep. 795, 22 Atl. 474). That where a testator misdescribes an estate as to its locality, and there is sufficient appearing on the face of the will, as applied to the subject matter, to show that such description was a mistake, it will not have the effect to defeat the obvious intention of the testator: *Moreland* v. *Brady*, 8 Or. 303 (34 Am. Rep. 581); 1 Redfield on Wills, *469. While words cannot be added to a will, yet, in arriving at the intention of the testator, so much as is false in the description may be rejected, and, if enough remains to identify the premises intended to be devised, the will may be read and considered with the

false words eliminated therefrom: *Whitcomb* v. *Rod-man,* 156 Ill. 116 (47 Am. St. Rep. 181, 40 N. E. 553). It is presumed that the testator, when he makes and publishes his will, intends to dispose of his whole estate, unless the presumption is rebutted by its provisions or evidence to the contrary: *Smith's Executor* v. *Smith,* 17 Grat. 268; *Irwin* v. *Zane,* 15 W. Va. 646. Apply these rules and tests to the case at bar; the result is manifestly favorable to the defendant.    The testator and his wife were the owners, as tenants in common, of the unsold portion of the Oregon City claim, platted and unplatted, and the various provisions of the· will indicate quite clearly that he.intended it should operate as a partition or division thereof between his wife and children, and that she consented thereto.    In other words, it would seem that he intended to devise to his wife his two thirds interest in the portion of the claim described in the second clause of the will in consideration of her consent to the division of the remainder, including her· interest, among his children, as he assumed to do in other· parts of the will.    This intention is indicated by the preamble to the second clause, in which the testator recites the fact that his wife is the owner in her own right of the undivided one third of all the property of her father, Dr. McLoughlin, in the State of Oregon, and then proceeds to say " that, as and for the divided interest in and to all the unsold real estate to which she was so entitled, she fully consenting thereto, I hereby formally give and devise to her" certain described real property, including "all that part of the Oregon City land claim not laid off into

lots and blocks, and lying in the northeasterly portion
of said claim, and containing 85 acres, more or less."
Now, this is the only reference in the will to the por-
tion of the claim not laid off into lots and blocks, and
it is apparent that the testator intended, in order to
carry out his plan of division, to devise all such por-
tion to his wife, and there is nothing in the language
as used to prevent this intention from being carried
into effect. Indeed, no other construction can, it
seems to us, be put upon the language used. The un-
platted part of the claim was one body of uninclosed
land lying in the north and easterly portion thereof,
and was not divided into separate tracts by either
natural or artificial boundaries. There was no par-
ticular part thereof to which the description con-
tended for by the plaintiff can apply. It can only be
satisfied by arbitrarily measuring off a tract contain-
ing 85 acres somewhere in the northeasterly portion
of the claim, and there is nothing in the will or in
the actual condition of the land itself by which the
particular portion so to be set off can be ascertained.

It will also be observed that the devise is not of a
part of the unplatted portion of the claim, but of "all
that portion of the Oregon City land claim not laid
off into lots and blocks," which it is admitted is suffi-
ciently definite, if it stood alone; and the question is
whether this certain and definite description is, in
view of the surrounding circumstances, to be con-
trolled and limited by the words "and lying in the
northeasterly portion of said claim and containing 85
acres, more or less." If this latter clause, which was
evidently intended as an additional or cumulative de-

scription, be omitted, the case presents no difficulty whatever; and it is a well settled rule that a mere inaccurate statement as to the location of the property intended to be devised, or of the number of acres contained therein, will not limit or restrict an otherwise definite and certain grant. Thus, where the property devised was described in the will as lots 1 and 2, in block 187, of the City of Portland, and the testator did not own lots 1 and 2, in such block, but did own lots 2 and 4 therein, it was held that the erroneous part of the description might be rejected, and that the remainder was sufficient to identify the property intended to be devised with reasonable certainty: *Moreland* v. *Brady*, 8 Or. 303 (34 Am. Rep. 581). So, also, a conveyance of "all real estate situated in Hope, Warren and Union, meaning to convey all my right, title and interest in the real estate occupied by me," is not limited by the latter clause to the estate actually occupied by the grantor: *Hobbs* v. *Payson*, 85 Me. 498 (27 Atl. 519). And again, a devise of "all moneys and properties, real and personal," etc., "in the City of Chicago, County of Cook, and in Ogle County, State of Illinois," was held to pass real estate of the testator in Cook County, although outside of the City of Chicago: *Higgins* v. *Dwen*, 100 Ill. 554. So, also, a devise "of the undivided one half of all the lands of which I may die possessed, my lands being in the north half of the northeast fractional quarter of section 35," is sufficient to pass lands in section 36: *Priest* v. *Lackey*, 140 Ind. 399 (39 N. E. 54). So, also, a lease "of the farm on which J. D. now lives, lying east of the farm of J. M., west of the

farm of A. B. and J. D., and south of the farm of T. B., to contain 80 acres in one piece," was held to include the entire farm, although it contained in fact 149 acres: *Jackson* v. *Barringer*, 15 Johns. 471. Many other authorities could be cited to the same effect, but these are sufficient to illustrate the application of the principle that an erroneous statement as to the location of property intended to be devised will not limit or restrict an otherwise definite description. In our opinion the devise in question included all that portion of the Oregon City claim not laid off into lots and blocks, and the judgment of the court below must therefore be affirmed.

AFFIRMED.

Decided January 10, 1898; rehearing denied.