Argued December 2, decided December 16, 1913.

# KASER *v.* KASER.*

## (137 Pac. 187.)

**Wills—Construction—Intent of Testator.**

1. Under Section 7347, L. O. L., requiring courts and others to have due regard to the directions of a will, and the true interests and meaning of the testator in all matters brought before them, the testator's intent is controlling, unless it cannot be carried into effect without a violation of the rules of law.

**Wills—Construction—Vested or Contingent Interests.**

2. Though generally no interests vest under a mere direction in a will to divide the property in the future, yet if the postponement is to enable an intermediate enjoyment for life, the presumption is rebutted and the interest of the remainderman vests, either absolutely or defeasibly, on the death of the testator.

**Wills—Construction—Designation of Beneficiaries—Classes.**

3. A testamentary disposition of personalty to several colegatees, naming them, is not a gift to a class, does not create survivorship, and the share of a legatee dying before the time of distribution will not go to the survivors unless survivorship is distinctly expressed or clearly implied.

[As to devises and bequests to a class, see note in 73 Am. St. Rep. 413.]

**Wills—Construction—Time from Which Will Speaks.**

4. Though a will may, for some purposes speak from the date of execution, as a general rule it expresses the testator's intention at the time of his death, unless a fair construction manifests a purpose to speak as of a different date.

**Wills—Construction—Contingencies—Death of Beneficiaries.**

5. A will which leaves property, after the death of testator's wife, to his children, and provides that, in the event any of his children "die leaving lawful issue," such issue shall take the share left to their parent, but, if any of the children "should marry and die" leaving no issue, the surviving husband or wife should take nothing, by the will, refers to death at some future time.

**Wills—Construction—Dying Without Issue.**

6. A will providing that if any of testator's children, to whom he leaves property after the death of his widow, should marry and die

---

*The authorities on the question to what time the contingency of death of a legatee or devisee without child or issue, upon which a gift is conditioned, is referable are collated in an extensive note in 25 L. R. A. (N. S.) 1045.          REPORTER.

without issue, the surviving husband or wife should take nothing by the will, refers to a definite failure of issue, or dying without lineal descendants.

**Wills—Construction—Partial Intestacy.**

7. A will gave all of testator's property to his wife for life, directed its division at her death among his seven children, and provided that if any of the children should die and leave issue, such issue should take the share left to the parent, but if any should marry and die leaving no issue, the surviving husband or wife should take nothing by the will. *Held,* that, as to the share left to a child who died leaving a wife but no issue, the testator died intestate.

**Wills—Rights of Legatees—Election.**

8. Section 7349, subdivision 4, L. O. L., gives to the widow out of decedent's property as to which he dies intestate one half of the personalty remaining after an allowance to the widow and the payment of debts. *Held,* that her acceptance of a provision in the will giving her the use of all of testator's property during her life does not waive her rights under this section to a portion of the remainder as to which testator dies intestate.

**Wills—Persons Entitled and Shares.**

9. Where a will leaves all of testator's property to his wife for life and then to his seven children, and provides that if any of the children die without issue the surviving husband or wife of such child shall take nothing by the will, where a child dies without issue during the life of testator's widow, the child's widow is entitled to one seventh of one seventh of one half of the property as intestate property.

From Multnomah: Robert G. Morrow, Judge.

Department 1. Statement by Mr. Justice Moore.

This is a suit by Elizabeth Kaser, administratrix, against Hannah M. Kaser, to establish an interest in personal property, and to require the defendant to execute an undertaking with sureties conditioned that such property shall, without waste or destruction, be delivered to plaintiff upon the death of the defendant. The complaint charges in effect that on June 11, 1911, J. R. Kaser died intestate, in Multnomah County. A copy of his will is set forth, from which the following excerpts are taken:

"First. I give, devise and bequeath all the property of which I may die possessed, of whatever name

and nature and wherever situated, to my beloved wife, Hannah Maria Kaser, for the term of her natural life.

"Second. Upon the death of my wife, Hannah Maria Kaser, it is my will that all my said property be divided between my said children, Kyle H. Kaser, Armintha L. Kaser, Mary Esther Kaser, Loren Hartwood Kaser, Welrose Rudolph Kaser, Elmo Hilly Kaser, and Clarence Kaser, share and share alike.

"Third. In the event that any of my children named in paragraph two hereof die leaving lawful issue, it is my will that said issue take the share thereby left to their parent; providing, however, that if any of my children should marry and die leaving husband of (or) wife surviving but no issue, it is my will that such surviving husband or wife of my child or children, as the case may be, take nothing by this will."

The complaint further alleges, in substance: That on July 2, 1911, Clarence Kaser, one of the beneficiaries above named, died in that county intestate, without issue, but leaving a widow, Elizabeth Kaser, the plaintiff herein. That the will of J. R. Kaser was admitted to probate in that county. That the executors named by the testator, having duly qualified, caused to be filed an inventory, showing the value of that estate to have been appraised as follows: Nonperishable personal property, $4,472.67; and real estate, $5,215. That on March 22, 1912, the remaining devisees named in such will, executed to their mother, the defendant herein, an assignment of their respective interests in and to all money and personal property of their father's estate. That on May 28, 1912, such executors having filed their final account, and due notice thereof having been given, the estate of J. R. Kaser was closed and they were discharged. That on October 3, 1912, the plaintiff was duly appointed administratrix of the estate of Clarence Kaser, deceased.

That the interest which he had in the nonperishable personal property of his father's estate is in danger of being lost, and that an action at law is not an adequate remedy for the protection of such interest. A demurrer to the complaint, on the grounds that it did not state facts sufficient to constitute a cause of suit, was sustained, and, the plaintiff declining further to plead, the suit was dismissed, and she appeals.

REVERSED.

For appellant there was a brief over the names of *Mr. J. F. Sedgwick* and *Mr. George D. Smith,* with an oral argument by *Mr. Sedgwick.*

For respondent there was a brief and an oral argument by *Mr. Frank Schlegel.*

MR. JUSTICE MOORE delivered the opinion of the court.

The only question to be considered is whether or not the plaintiff, as the administratrix of the estate of Clarence Kaser, deceased, has any interest in the personal property of the testator's estate, after the determination of the defendant's life interest in the property the use of which did not result in a consumption thereof.

"Originally, where a chattel mortgage or other personal estate," says Mr. Justice MULKEY, in *Welsch* v. *Belleville Savings Bank,* 94 Ill. 191, 204, "was given to one for life with a limitation over to another, the former took the absolute title, and the limitation over was void, both at law and in equity. In the course of time, however, equity which has ever been a pioneer in the interests of justice and right—in the case of a devise of a chattel real to one for life with a limitation over to another, interposed on behalf of the remainderman, holding the limitation over good as an executory devise, but not as a remainder. And even now such

limitations over are not, strictly speaking, remainders; for it is as true now, as then, one cannot, in the common-law sense of the term, have an estate in money or a mere chattel. The interest thus conferred, in so far as it is acquired by an express limitation over, and is not to be enjoyed in possession until a future day, is analogous to that of a remainder, and it is only called a remainder by way of analogy.''

By the early rule, prevailing in England, it was determined at law that an interest in personal property could not be created by way of a remainder; but in equity it was ruled that, if a chattel personal were bequeathed to A for life and upon his death to B, the property was considered as belonging to B, and that A had only the use thereof: Gray, Perpetuities (2 ed.), § 84. In America, however, a future limitation by will of a chattel personal passes a legal interest both at law and in equity: Gray, Perpetuities (2 ed.), § 88; 40 Cyc. 1640.

By the bequest of a chattel for life the legatee under the rules of the ancient law took the property absolutely, and every limitation over was ineffectual for any purpose, for the reason that an estate for life in personal property was treated as the highest possible interest which could be acquired in or to a chattel, and hence nothing remained to be limited over. That doctrine, however, has been repudiated in the United States, where the rule is quite general that, though a bequest of nonperishable personal property, without express words of limitation, evidences an unconditional gift, yet the testator may, by the employment of proper words, restrict the bequest to the use of the chattels for life by the legatee, which testamentary disposition will be upheld.

1, 2. In construing the clauses of a will, the purpose sought to be accomplished is to discover, if possible, the testator's intent with respect to the disposition of

his property after death, and when that intention is ascertained it is controlling unless such purpose cannot be carried into effect without a violation of the rules of law: Section 7347, L. O. L.; *Shadden* v. *Hembree*, 17 Or. 14 (18 Pac. 572); *Jasper* v. *Jasper*, 17 Or. 590 (22 Pac. 152); *Portland Trust Co.* v. *Beatie*, 32 Or. 305 (52 Pac. 89); *Proprietors of the Church in Brattle Square* v. *Grant*, 3 Gray (Mass.), 142, 158 (63 Am. Dec. 725). An examination of the first and second clauses of the will, as hereinbefore quoted, shows an unmistakable purpose on the part of the testator to give the use of all the real and the nonperishable personal property of which he might die seised or possessed to the defendant, during her natural life, upon the termination of which all such property was to be divided equally among his seven children, naming them. It will be observed that there are no words of gift to the children, except in so far as a donation can be implied from the direction to divide all the testator's property upon the death of the widow. In such case, it is generally held to prevent a vesting until the time for partition; but, if the postponement was to enable an intermediate enjoyment by a tenant for life, the presumption raised by such expression is rebutted, and the interest of the remainderman vests either absolutely or defeasibly, on the death of the testator: Rood, Wills, §§ 590, 591.

In *Proprietors of the Church in Brattle Square* v. *Grant*, 3 Gray (Mass.), 142, 148 (63 Am. Dec. 725), in speaking of a condition marking the period which determines an estate, without any act on the part of him who has the next expectant interest, Mr. Justice Bigelow says: "The limitation over being executory, and depending on a condition, or an event which may never happen, passes no vested interest or estate."

3. The third clause of the will is the paragraph the meaning of which is doubtful. It is there stated: "In the event that any of my children * * die, leaving lawful issue, it is my will that said issue take the share left to their parent." The time of the death of such child is not specified. Whether such death was contemplated before the death of the testator, upon the death of the defendant, or at any other time, is not specifically indicated. That clause further provides that, if any of the testator's children should marry and die leaving a spouse but no issue, such surviving husband or wife was to take nothing by the will. In that case what was to become of the real and personal property so devised and bequeathed to such child is wholly a matter of speculation for the will is silent upon the subject. A testamentary disposition of personal property to several colegatees, naming them, is not a gift to a class, and does not create survivorship, so that the share of a legatee dying before the time of distribution will go to those that live after such death, unless survivorship is distinctly expressed by the terms of the will, or is clearly implied therefrom: 40 Cyc. 1507.

4. In order, therefore, to ascertain the testator's intention as to the disposition of his property after his death, resort must be had to the rules adopted for the construction of wills in doubtful cases. Though a will, for some purposes, may be construed as speaking from the date of execution, as a general rule its expressions are supposed to give utterance to the testator's intention at the time of his death, unless by a fair construction the language manifests a purpose to speak as of a different date: 40 Cyc. 1424; Rood, Wills, § 87. The will under consideration was executed December 14, 1905, or nearly five and a half years before the testator died.

5. An examination of paragraph 3 of the will would seem to indicate that the language there used was intended to apply to the future. Thus the word "die" in the sentence, "In the event that any of my children * * die," etc., implies death at any time. So, too, the word "should" as subsequently employed in the sentence, "If any of my children should marry and die," etc., signifies a demise at some future time. If the will had bequeathed to the testator's childen, naming them, "and their issue" each child so named would have taken an absolute title to the personal property: Rood, Wills, § 556. The qualification "and their issue" is not used anywhere in the will.

6. In the third clause the testator directs that if any of his children should marry and die leaving a husband of (or) wife surviving "but no issue," etc. Here the term "dying without issue" evidently means a definite failure of issue; that is, dying without lineal descendants: *Buchanan* v. *Schulderman,* 11 Or. 150 (1 Pac. 899). A gift of personalty over on a definite failure of issue is valid as an executory bequest, thereby divesting the previous interest on the happening of the condition: Rood, Wills, §§ 634, 638.

Whether there were any issue in being of the children of testator when he died does not appear from the averments of the complaint; but, however this may be, a bequest to the issue of his children who were not *in esse* at the time of his death is nevertheless executory: 1 Jarman, Wills (6 ed.), *822. Such a bequest when, as in the case at bar, it does not violate the rule against perpetuities, is regarded as a valid testamentary disposition of property: *Buchanan* v. *Schulderman,* 11 Or. 150 (1 Pac. 899) ; *Shadden* v. *Hembree,* 17 Or. 14 (18 Pac. 572) ; *Love* v. *Walker,* 59 Or. 95 (115 Pac. 296). "When the disposition of an aliquot part of the residue itself," says a noted author,

"fails from any cause, that part will not go in augmentation of the remaining parts, as a residue of residue, but will devolve as undisposed of": 1 Jarman, Wills (6 ed.), *719.

7. Looking at the entire will with a view of giving effect to each of its provisions, so as to carry out the testator's intentions, it is believed that it was his purpose, after bequeathing to his wife an interest for life in the nonperishable personal property, also to give to each child an interest for life therein, with an executory bequest over to the lawful issue of such child; but, if any child married and died without issue, the interest which such child took by division upon the death of the defendant thereupon failed for want of apt words in the will as to which interest J. R. Kaser died practically intestate.

What has been here said with respect to the duration of the estate and interest which each child will take by will upon the death of the defendant is used only by way of illustration, for the remark can have no binding force upon the testator's surviving children, since they are not parties to the suit. The conclusion thus reached does not exclude the plaintiff, as the widow of Clarence Kaser, from receiving a share of the testator's nonperishable personal property.

8, 9. Assuming that J. R. Kaser died intestate with respect to an undivided one seventh of such property the possession of which would have gone to Clarence Kaser on the death of his mother if he had lived, it remains to be seen what interest the plaintiff took by inheritance in such chattels. The defendant, upon the death of her husband, after the allowance prescribed by law had been made, was entitled to receive one half of the remainder of all the personal property in her own right: Section 7349, subd. 4, L. O. L. It might seem that, since by the provision of the will she ac-

cepted the use of such entire property during her natural life, she thereby waived her right to insist upon the distribution which the statute thus gave her. Such is not, the rule, however, and she must be given the share of the intestate property, though she may have elected to take under the will: Rood, Wills, § 497. It will be remembered that the nonperishable personal property was appraised at $4,472.67, one seventh of which is $638.95. The defendant is entitled to one-half interest thereof, or $319.47. The plaintiff as the widow of Clarence Kaser, who died without issue, is entitled to the share which her husband would have taken by inheritance in the intestate property: Section 7349, subd. 4, L. O. L. That is, she is entitled to one seventh of the remainder, or $45.63, upon the death of the defendant.

The decree is therefore reversed, the demurrer overruled, and a decree will be entered, requiring the defendant to give a good and sufficient undertaking whereby the sureties upon her death will pay or cause to be paid to the plaintiff the sum of $45.63.

REVERSED: DECREE RENDERED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BURNETT and MR. JUSTICE RAMSEY concur.