457

Argued and submitted June 12, affirmed September 12, 2001

Dorothea KIDDER,
*Appellant,*

*v.*

Harold OLSEN,
the duly appointed and
acting Personal Representative of
the Estate of Newell A. Lawley;
and Heather Gartin,
*Respondents.*

98-2330; A109948

31 P3d 1139

Robert P. Van Natta argued the cause and filed the brief for appellant.

No appearance for respondent Harold Olsen, Personal Representative of the Estate of Newell A. Lawley, Deceased.

David Brian Williamson argued the cause for respondent Heather Gartin. With him on the brief was Williamson & Williamson.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges

HASELTON, P. J.

## HASELTON, P. J.

Plaintiff Dorothea Kidder, a devisee under the will of the decedent, Newell A. Lawley, appeals from a declaratory judgment that, pursuant to the terms of decedent's will, defendant Heather Gartin has the right to purchase decedent's farm for $46,160, which represents one-half of the property's tax-assessed value at the time of decedent's death.[1] We conclude that the trial court correctly construed the will and that Gartin's failure to tender that price within 180 days of decedent's death was excused and, thus, did not preclude Gartin's entitlement to purchase. Consequently, we affirm.

The facts, except as noted, are uncontroverted. Decedent died testate on March 3, 1998. Decedent's will, which he executed on November 7, 1995, contained the following provisions relevant to this dispute:

"2.1   PERSONAL   REPRESENTATIVE.   I   name Heather Louise Parker Gartin, hereinafter referred to as 'Heather', as my personal representative. If Heather fails to qualify or ceases to act as my personal representative, I name Dorothea M. Kidder, hereinafter referred to as 'Dorothea', as my personal representative.

"* * * * *

"3.1   TANGIBLE PERSONAL PROPERTY. I give any interest I have in household goods and furnishings, personal vehicles, recreational equipment, clothing, jewelry, personal effects, and other tangible personal property for personal or household use, together with any insurance on this property, in substantially equal share to the following persons who survive me: Heather and Dorothea, to be divided equally among them as they agree or, if they do not agree, as my personal representative determines.

"3.1(a)   I give all my farming implements belonging to me at my death that are on my farm located at 10874 Swedetown Road, Clatskanie, Oregon to Heather.

---

[1] Plaintiff was decedent's biological niece (the legal relationship had been terminated by adoption); Gartin was his stepdaughter. Both Gartin and decedent's successor personal representative, Olsen, are defendants in this action. For clarity, we will refer to Gartin and Olsen collectively as "defendants" but individually by their respective surnames.

"* * * * *

"4.1 PRIMARY BENEFICIARIES. I give the residue of my estate to Heather and Dorothea share and share alike and to their descendants by right of representation. EXCEPT, Heather shall have the right to purchase the farm at:

"All Lot #1 in Block #8 in Spitzenberg, according to the duly recorded plat thereof, situated in the County of Columbia, State of Oregon. All mineral rights reserved, but if exercised, full compensation for all damage to land or improvements is guaranteed.

"by paying Dorothea half the then-current tax assessed value in cash or cash equivalent. If Heather does not give Dorothea written notice of her intent to purchase the farm within 60 days of my death and does not close the sale within 180 days of my death, under the terms and conditions specified above, the farm should be liquidated and the value divided equally between Heather and Dorothea."

Following decedent's death, Gartin was appointed personal representative.

At the time of his death, decedent owned two pieces of real property, neither of which was located in Spitzenburg. The first, a roughly 90-acre parcel known as "tax lot 500," is located at 20874 Swedetown Road in Clatskanie, and is described to encompass:

"The North Half of the Southeast Quarter of Section Twenty-six (26), in Township seven (7) North of Range four (4) West of the Willamette Meridian, and also commencing at the Southwest corner of the Southwest Quarter of the Northeast Quarter of said Section twenty-six, and running thence East forty rods; thence North forty rods; thence West forty rods; and thence South forty rods to the point of beginning."

The second, a forested 40-acre parcel adjacent to tax lot 500 and known as "tax lot 300," is described as follows:

"North Half (N½) of North Half (N½) of the Southwest Quarter (SW¼) of Section Twenty-five (25), in Township seven (7) North, Range four (4) West of the Willamette meridian, except sixty-foot right-of-way for CCC and County Roads now located on this property.

"Also excepting minerals on or under said property, if any, which are hereby reserved for the benefit of Columbia County, Oregon."

On March 19, 1998, Gartin gave plaintiff notice that, pursuant to the farm purchase option in article 4.1, she intended to purchase both tax lot 500 and tax lot 300 in Clatskanie for the "then-current tax assessed value." Plaintiff, through her attorney, objected, noting that article 4.1 did not refer to either lot 300 or lot 500, but to a piece of property in Spitzenburg unrelated to decedent's farm on Swedetown road: "It is not apparent to me how the personal representative can justify going against the plain language in the Will attempting to convert one lot in Spitzenberg into two different pieces of property in Clatskanie."

Plaintiff's letter also demanded that Gartin voluntarily resign as personal representative, suggesting that Gartin's proposed purchase constituted a "conflict of interest in attempting to go against the plain language of the Will which she is required to uphold." Gartin, however, did not voluntarily resign. Consequently, plaintiff filed a request with the probate court seeking Gartin's removal as personal representative. The probate court, in response, issued an order removing Gartin as personal representative and appointing Harold Olsen as her successor.

On July 30, 1998, plaintiff brought this declaratory judgment action, naming both Gartin and Olsen as defendants. Plaintiff's amended and supplemental complaint of October 28, 1998, sought a declaration

"that Heather Gartin does not have a preferential right under Section 4.1 to acquire the property mentioned in Paragraph 4, or alternatively, any rights that she may have had expired in accordance with the terms and provisions of the Will when the sale was not closed within 180 days of the decedent's death."

At the time plaintiff filed her amended and supplemental complaint, she served defendants with a request for admissions under ORCP 45. That request sought defendants' admissions that: (1) "no sale of any estate asset under paragraph 4.1 of the Will of Newell A. Lawley was closed within 180 days of Newell A. Lawley's death"; (2) Gartin "did not pay

nor tender any money to [plaintiff] within 180 days" of decedent's death; and (3) Gartin "did not communicate with the successor personal representative * * * in any way within 180 days of the death of Newell A. Lawley, so as to communicate any desire that she may have had to close a sale" as permitted under the will. Gartin, in response, admitted each of those allegations but qualified her admission by arguing that plaintiff was estopped from relying on her failure to close or provide tender. In particular, Gartin argued that the closing deadline was "waived by plaintiff when she petitioned for Heather Gartin's removal as personal representative to prevent her from closing the sale," and that "[t]ender to plaintiff was excused by plaintiff's objections to the sale and petitioning for Heather Gartin's removal as personal representative to prevent her from completing the sale."[2]

The case was tried to the court. In November 1999, the trial judge issued a letter opinion in which he agreed with Gartin that decedent's will gave her a right to buy decedent's farm on Swedetown Road in Clatskanie, but concluded that, based on the admissible extrinsic evidence, decedent's "farm" included only tax lot 500.[3] In addition, the court rejected plaintiff's arguments that Gartin's option had expired on September 3, 1998, and that the sale price should not be based on the tax-assessed value at the time of decedent's death, because that value, by virtue of Measure 50,[4] did not correspond to the property's fair market value. Accordingly,

---

[2] Gartin did not raise those equitable arguments in any responsive pleading. Nevertheless, the issue of waiver/estoppel was raised in Gartin's answer to plaintiff's request for admissions, discussed at trial, and addressed by the trial court in its final judgment. Thus, under ORCP 23 B, the pleadings were effectively amended to include those issues, which were tried by the parties' implied consent. *Smith v. Wallowa County*, 145 Or App 341, 345, 929 P2d 1100 (1996).

[3] The trial court thus rejected Gartin's argument that decedent regarded his "farm" to include both tax lot 500 and tax lot 300. Neither party challenges that determination on appeal.

[4] Measure 50 was adopted by the voters in a May 1997 special election. The referendum, as relevant to this dispute, effected two changes on Oregon property tax law. First, it set the maximum assessed value of property in Oregon for the 1997-98 tax year as 90 percent of the property's real market value in the 1995-96 tax year. Second, it limited any increase in a property's maximum assessed value for subsequent tax years to three percent per year. Official Voters' Pamphlet, Special Election, May 20, 1997, 5. Thus, Measure 50 established a valuation scheme under which a particular property's tax-assessed value might not mirror its fair market value.

the court issued a declaratory judgment that, pursuant to the terms of decedent's will, Gartin was entitled to purchase tax lot 500 for $46,160, but that the option did not extend to tax lot 300.

On appeal, plaintiff raises four assignments of error. In particular, plaintiff argues that the trial court erred in concluding that: (1) the sale price should be based on the property's post-Measure 50 tax-assessed value; (2) Gartin's failure to pay or tender the purchase price and close the sale within 180 days of decedent's death as prescribed by the will was excused "because Plaintiff repudiated and contested the will provision"; (3) Gartin was ready, willing, and able to close the sale; and (4) section 4.1 of decedent's will gave Gartin the right to purchase decedent's farm—namely tax lot 500 at 20874 Swedetown Road in Clatskanie. For cogency of analysis, and because it is potentially dispositive, we begin with plaintiff's fourth assignment of error.

It is a well-established principle in Oregon that "[t]he intention of a testator, as expressed in his will, is * * * the controlling factor in its construction * * *." *Portland Trust Co. v. Beatie,* 32 Or 305, 309, 52 P 89 (1898); *see also* ORS 112.227 (codifying common-law rule). A court seeking to divine the testator's intent "as expressed in his will" is not, however, limited solely to the words used in the will. Rather, construction of a will often requires resort to maxims of construction and, where appropriate, extrinsic evidence. *Portland Trust Co.,* 32 Or at 309-10 (citations omitted).

Three derivative principles guide our analysis. First, it is essential that any court interpreting the testator's words view those words in the appropriate context. Consequently, extraneous oral evidence is admissible, for example, "to show the state and extent of the testator's property, in order to place the court in the same position the testator was in at the time he made the will in question." *Moreland v. Brady,* 8 Or 303, 313 (1880).

Second, extrinsic evidence is also admissible to identify and resolve latent ambiguities in a will. *Barnstable v. U. S. Nat. Bank et al,* 232 Or 36, 40, 374 P2d 386 (1962). In other words, while the general rule is that a will speaks for

itself, "[i]t has long been recognized * * * that extrinsic evidence is admissible to reveal a latent ambiguity in the words of the testator and that a court will then construe the will in light of the extrinsic evidence." *LaGrand v. LaGrand*, 47 Or App 81, 84, 613 P2d 1091 (1980) (citing *Barnstable*).

Finally, any court interpreting a will must be mindful of the distinction between erroneous descriptions, on the one hand, and mistakes by the testator as to the effect of particular words in a will, on the other. As to the former, to the extent that the context informing a decedent's will reveals an erroneous description, either of a devisee or of the subject matter of a devise, such false descriptions may be eliminated, and the will may be interpreted using only the remaining words. *Moreland*, 8 Or at 313-14. Conversely, mistakes by the testator as to the effect of otherwise unambiguous wording, "may not be considered by a court in construing a will. 'It is what a testator said in his will rather than what he meant to say that should be determined.'" *LaGrand*, 47 Or App at 86-87 (quoting *Unander v. U. S. Nat'l Bank et al*, 224 Or 144, 155, 355 P2d 729 (1960)). Thus, while rules of construction and extrinsic evidence are useful to interpret the testator's intent as expressed in the will, extrinsic evidence cannot be used to contravene an otherwise clear expression of intent. *Portland Trust Co.*, 32 Or at 309; *see also Putnam et ux v. Jenkins et ux*, 204 Or 691, 704, 285 P2d 532 (1955) (extrinsic evidence is admissible to show the meaning of language employed by the testator or to apply the description in a testamentary instrument to the land actually covered by the description, but is not admissible "to show an intention not otherwise expressed in the writing").

With those principles in mind, we turn to this dispute. The parties disagree as to whether decedent's will gives Gartin an option to purchase decedent's farm on Swedetown Road in Clatskanie. Two provisions in the will—articles 3.1(a) and 4.1—bear on that determination: Article 3.1(a) bequeaths "all farming implements belonging to me at my death that are on my farm located at 10874 Swedetown Road, Clatskanie, Oregon to Heather." Article 4.1 does not refer to any Swedetown Road farm, but states:

"I give the residue of my estate to Heather and Dorothea share and share alike and to the descendants by right of representation. EXCEPT, Heather shall have the right to purchase the farm at:

> "All Lot #1 in Block #8 in Spitzenberg, according to the duly recorded plat thereof, situated in the County of Columbia, State of Oregon. All mineral rights reserved, but if exercised, full compensation for all damage to land or improvements is guaranteed.

"by paying Dorothea half the then-current tax assessed value in cash or cash equivalent. If Heather does not give Dorothea written notice of her intent to purchase the farm within 60 days of my death and does not close the sale within 180 days of my death, under the terms and conditions specified above, the farm should be liquidated and the value divided equally between Heather and Dorothea."

Both parties agree that articles 3.1(a) and 4.1 describe property that decedent has not owned and has never owned. Rather, at all relevant times, decedent lived on a farm at 20874 Swedetown Road in Clatskanie (not 10874 Swedetown Road as described in article 3.1), and had no ties whatsoever to the Spitzenburg property described in article 4.1.[5] Thus, as stated in *Moreland*, it is "certain that the lots named were erroneous, and the words describing them can have no possible operation, and must be rejected. The devise is the same as if the [erroneous descriptions] had not been mentioned at all * * *." 8 Or at 313.

Our role, consequently, is to determine decedent's intent from the remaining terms of his will. *Moreland*, 8 Or at 313-14 ("[w]e are then compelled to fall back upon the remaining portion of the description"). With the erroneous provisions redacted, articles 3.1(a) and 4.1 read:

> "3.1(a)   I give all farming implements belonging to me at my death that are on my farm at [* * *] Swedetown Road, Clatskanie, Oregon to Heather.
>
> "* * * * *

---

[5] Apparently, the legal description included in the will was taken from a page that was erroneously included on a title report provided to decedent's attorney by a local title company.

"4.1 PRIMARY BENEFICIARIES. I give the residue of my estate to Heather and Dorothea share and share alike and to their descendants by right or representation. EXCEPT, Heather shall have the right to purchase the farm [* * *] by paying Dorothea half the then-current tax assessed value in cash or cash equivalent. If Heather does not give Dorothea written notice of her intent to purchase the farm within 60 days of my death and does not close the sale within 180 days of my death, under the terms and conditions specified above, the farm should be liquidated and the value divided equally between Heather and Dorothea."

Plaintiff acknowledges that article 3.1(a), when so viewed, unequivocally expresses decedent's intent to bequeath the farm implements located at his farm at 20874 Swedetown Road to defendant. *See Putnam*, 204 Or at 703-04 (testamentary devises of property need not be described with the accuracy necessary in the case of a deed). In addition, as the trial court found (and the parties do not dispute on appeal), decedent considered his "farm" to include only tax lot 500, and not the adjacent timbered tax lot 300. Thus, the question narrows to whether "the farm" referred to in article 4.1 is the Swedetown Road farm referred to in article 3.1(a).

Plaintiff argues that the will's references to "my farm" and "the farm" do not connote the same piece of property. In particular, plaintiff asserts that to equate the two is tantamount to reformation of the will, something Oregon courts have never embraced. *See, e.g., Scarlett v. Hopper*, 110 Or App 457, 460, 823 P2d 435 (1992) (error for trial court to have effectively reformed will). Gartin responds that to ascribe a distinction between the possessive pronoun "my" and the article "the," at least in the context of this will, would "frustrate the directive of ORS 112.227 to ascertain the intention of the testator" as expressed in the will. We agree with Gartin.

Decedent's will here contains two references to a "farm." The first reference, in article 3.1(a), refers to decedent's farm on Swedetown Road and bequeathed all of the farm implements at that farm to Gartin. In the second, article 4.1 devised to Gartin, again, the right to purchase "the farm." The reference to "the farm" in article 4.1 is separated from the description of "my farm" in article 3.1(a) only by

articles 3.1(b) and 3.1(c), which embody six lines of text and bequeath specific sums of money to a local church and to the City of Clatskanie for maintenance of a local cemetery. The will is devoid of any references to any other farm. Thus, the text of the will, as evidenced by both the proximity of the two references to "farm" and the fact that Gartin was the devisee of both farm-related devises, suggests that decedent's reference to "the farm" in article 4.1 referred to the same farm described in article 3.1(a).

The admissible extrinsic evidence as to the state and extent of decedent's property also supports the conclusion that decedent intended "my farm" and "the farm" to refer interchangeably to his Swedetown Road farm. *Moreland*, 8 Or at 313 (stating rule regarding admissibility of such extrinsic evidence). That evidence, which is undisputed, shows that decedent's only farm, both at the time of the execution of his will and at his death, was his farm on Swedetown Road. Given that context, it is apparent that decedent had his Swedetown Road farm in mind when he executed his will, and that the will's references to "my farm" and "the farm" are synonymous. *Putnam*, 204 Or at 709-10 (parol evidence cannot contradict the terms of a will, but is admissible to place the court in the testator's situation, see things as the testator saw them, and apply his language as he understood and intended it). Thus, both the words in the will and the import of those words viewed in the context of decedent's understanding of the nature and extent of his property evince his intent to give Gartin an option to buy the farm at 20874 Swedetown Road in Clatskanie. *See In re Holland's Estate,* 180 Or 1, 17-20, 175 P2d 156 (1946) (considering extrinsic evidence relevant to the meaning of the words in a will, as opposed to the testator's intent separate and distinct from those words). Accordingly, we hold that decedent's will gave Gartin an option to buy that property.

We turn to plaintiff's argument, advanced in her second and third assignments of error, that, even if Gartin did have an option to purchase decedent's farm, that option expired when Gartin failed to close the sale within 180 days of decedent's death as required by article 4.1. In particular, plaintiff argues that because Gartin did not close the sale on

or before September 3, 1998—180 calendar days after decedent's death—the option expired, and no action by plaintiff excused or waived that deadline. Gartin counters that plaintiff, by objecting to the sale, requesting Gartin's removal as personal representative, and ultimately filing this action on July 30, 1998, is estopped from enforcing the 180-day deadline. For the following reasons, we agree with Gartin that the option has not expired.

It is useful, at the outset, to briefly recapitulate the events leading to the filing of this declaratory judgment action. Decedent died on March 3, 1998, and, as prescribed by his will, the probate court appointed Gartin as personal representative. On March 19, Gartin notified plaintiff of her intent to purchase both tax lot 300 and tax lot 500. Plaintiff, through her attorney, objected to the sale, arguing that article 4.1 did not give Gartin the right to purchase either or both of decedent's lots on Swedetown Road. In response, Gartin, in her capacity as personal representative, filed a petition with the probate court for direction on how to proceed. On April 15, plaintiff filed a petition with the probate court to remove Gartin as personal representative. On June 18, the probate court issued an order granting that petition and appointing defendant Olsen as personal representative. On July 30, plaintiff filed her original complaint, in which she sought a declaration that Gartin had no right to purchase either of decedent's Swedetown Road properties. In that complaint, plaintiff also raised the issue of the property's valuation. On August 24, Olsen sent a letter to the parties and the court indicating that the declaratory judgment action, rather than the request for direction pending before the probate court (which defendant had filed in March), was the better vehicle for resolving the issues as to the will's construction.

■ The effect of plaintiff's actions leading up to and including the July 30, 1998, complaint, when viewed in that context, becomes apparent. Plaintiff's objections to Gartin's exercise of the option and request that she be removed as personal representative thwarted Gartin's ability, as personal representative, to proceed with the closing. Plaintiff's July complaint, naming both Gartin a..d Olsen as defendants, effectively served to preclude eith r Olsen or Gartin from

proceeding with the sale.[6] In addition, plaintiff's complaint highlighted the material uncertainties in decedent's will, including whether article 4.1 gave Gartin an option to purchase decedent's farm, the extent of the "farm" as described in that provision, and the amount that she must pay to exercise any option that existed. In short, and as indicated by the then-pending request for direction in the probate court, until those matters were judicially resolved, the personal representative (either Gartin or Olsen), could not, as a fiduciary for the estate,[7] proceed with the sale.

Given that posture, plaintiff's actions to block Gartin's exercise of the option (and thus receive half of the proceeds from the sale of decedent's farm under the residuary clause), and the related uncertainties surrounding the parties' rights and obligations under the will, tolled the 180-day option period. *See Erickson v. Palmer et al*, 211 Or 342, 356, 315 P2d 164 (1957) (the holder of a testamentary option was required to exercise the option within the time specified in the will where the failure to do so was not the result of another party's efforts to block the exercise of that option for his or her own benefit); *Kerr v. Miller*, 159 Or App 613, 635, 977 P2d 438, *rev den* 329 Or 287 (1999) (tender is excused when amount owed is uncertain, unliquidated, or in dispute; "[p]arties confronted with significant uncertainties about their respective rights and obligations should be encouraged to obtain a judicial resolution, not punished for doing so"). Accordingly, we reject both of plaintiff's assignments of error relating to whether tender was properly excused by the trial court.[8] The trial court correctly held that Gartin's option to purchase decedent's Swedetown Road farm had not expired.

---

[6] The trial court made the uncontested finding that Olsen "was not willing to proceed with distribution of the real property until this lawsuit was concluded."

[7] *See* ORS 114.265 (a personal representative is a fiduciary of a decedent's estate).

[8] Other courts that have considered the issue have emphasized the essential relationship between the testator's intent and the effect of a devisee's failure to perform a condition. *See, e.g., Chamberlin v. Flowers*, 358 So 2d 463, 465 (Ala App 1978) ("in determining whether the performance of the condition can be properly excused, it is relevant to inquire as to whether the testator's primary concern was the betterment of the devisee (or legatee) or the performance of the condition"), *citing In re Bridge's Estate*, 41 Wash 2d 916, 253 P2d 394 (1953). *See also Muffoletto*

■ We finally consider plaintiff's assignment of error that the trial court erred in failing to disregard the effect of Measure 50 on property valuation, and, thus, in finding that the "tax-assessed value" of tax lot 500 was $92,320. Under article 4.1, Gartin was given an option to purchase tax lot 500 at half of its "then-current tax assessed value." The trial court reasoned that the will, by prescribing that the sale price be based on the *"then-current"* tax assessed value

"clearly refers to the tax-assessed value at the time of death. The language of the will clearly expresses the intent of decedent for a specific valuation method. While a party may question why this was used, it is not ambiguous."

We agree.

Affirmed.

---

*v. Melick,* 72 Md App 551, 559-61, 531 A2d 1285, 1289-90 (1987) (affirming trial court's extension of six-month option period because there was no evidence to suggest that the testator foresaw his widow's deliberate interference with the optionees' exercise of the testamentary option; "had the testator foreseen that possibility, he would have desired that strict compliance be excused"). *Cf. In re Estate of Michels,* 223 Neb 286, 290-91, 389 NW2d 285, 288-89 (1986) (devisee's failure to exercise option and tender performance within specified period of time excused where devisee's ability to do so precluded by will contests).