276 October 15, 2025 No. 905

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Northcraft Family Trust.

Jennifer COTTON,
*Petitioner-Respondent,*

*v.*

Ann N. LANSING,
*Respondent-Respondent,*

*and*

Chad NORTHCRAFT,
*Interested Person-Appellant.*
Douglas County Circuit Court
19PB05032; A180636

Kathleen E. Johnson, Judge.

Argued and submitted September 9, 2025.

Christopher W. Peterman argued the cause for appellant. Also on the briefs were Keith D. Ropp and Christopher W. Peterman Attorney at Law, P.C.

Ronald L. Sperry III argued the cause and filed the brief for respondent Jennifer Cotton.

No appearance for respondent Ann N. Lansing.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

In this probate matter involving the Northcraft Family Trust (the trust), interested person Chad[1] appeals a limited judgment ordering that "all assets of the Northcraft Family Trust *** be distributed, free of trust to Petitioner, Jennifer Northcraft." On appeal, Chad raises five assignments of error. For the reasons that follow, we affirm.

*Standard of Review.* Absent *de novo* review, "[w]e review the trial court's legal conclusions for errors of law and are bound by the court's findings of historical fact so long as there is any evidence to support them." *Bigsby v. Vogel*, 248 Or App 423, 425, 273 P3d 284 (2012).

Chad requests that we exercise our discretion to review *de novo*, however, this is not an exceptional case, and so we decline to exercise our discretion to review under that standard. *See* ORS 19.415(3)(b) (the court has discretion to apply *de novo* review in equitable actions); ORAP 5.40(8)(c) (providing that the court will exercise its discretion to review *de novo* "only in exceptional cases"). In particular, in our view, this is not a case in which *de novo* review is appropriate because the trial court made "express factual findings, including demeanor-based credibility findings" and "the trial court's decision comports with its express factual findings." *See* ORAP 5.40(8)(d) (setting forth factors that this court considers in determining whether to review *de novo*).

*First Assignment of Error.* The trial court determined that under the terms of Helen's will—which is the will that created the trust—the trust was to terminate upon the death of Tyler, with Jennifer receiving the corpus of the trust unless Jennifer predeceased Tyler. In particular, the trial court determined that Article V.B.2. of the will was unambiguous "with respect to what happens if Jennifer survived Tyler."[2]

---

[1] Because many of the individuals who were involved in the events underlying this dispute have the same surname, at trial the parties and certain other individuals were generally referred to by first name, which is also a convention used by appellant on appeal. We follow that convention.

[2] Article V.B. provides:

"**B. Northcraft Family Trust.** My Trustee shall administer and distribute the Northcraft Family Trust as follows:

In his first assignment of error, we understand Chad to challenge that determination, contending that the trial court erred in determining that Helen intended for the residue of the Northcraft Family Trust to pass to Jennifer upon the death of Tyler.

We agree with the trial court that although there are some ambiguities in the will—for example, regarding what property was to become a part of the trust—the will is not ambiguous as to Helen intent should Tyler predecease Jennifer. In that circumstance, the trust was to terminate with the assts of the trust being distributed to Jennifer. *Garcia v. Clark*, 300 Or App 463, 466, 455 P3d 560 (2019) ("In construing a will, the intention of a testator, as expressed in the will, is the controlling factor." (Internal quotation marks, ellipsis, and brackets omitted.)).

On appeal, in arguing that the trial court erred, Chad points to certain "extrinsic evidence." *See id.* at 466 ("Generally, a will speaks for itself, and a court may not resort to extrinsic evidence to ascertain a testator's intent. However, extrinsic evidence may be used to explain an ambiguity, intrinsic or extrinsic." (Internal quotation marks, ellipsis, and citation omitted.)) But that extrinsic evidence that Chad points to—which, among other things, suggests that Helen hoped Jennifer would "take care" of Chad—does not compel a different conclusion than that reached by the

"**1) Payments for Benefit of TYLER NORTHCRAFT, JENNIFER NORTHCRAFT and CHAD NORTHCRAFT.** Trustee shall have the discretion to sell, pledge or encumber trust assets for the benefit of TYLER NORTHCRAFT, JENNIFER NORTHCRAFT, or CHAD NORTHCRAFT. Trustee shall make payments at least quarterly, and more frequently if necessary, to TYLER NORTHCRAFT from the income from trust assets not used for the benefit of JENNIFER NORTHCRAFT or CHAD NORTHCRAFT. *** For so long as this Trust is in existence, Trustee may apply for the benefit of TYLER, JENNIFER, or CHAD such sums from the income and principal of the Trust as my Trustee shall deem necessary or advisable for their care, support, maintenance and education. ***.

"**2) Termination of Northcraft Family Trust.** TYLER NORTHCRAFT's shares in the [trust property] shall be held in trust for the duration of his life. Upon Tyler's death, the assets held in this trust shall be distributed to my granddaughter, JENNIFER NORTHCRAFT. If Jennifer should predecease her father, then the assets held in trust at the time of Tyler's death shall be distributed to his son, CHAD NORTHCRAFT. Upon Chad's death, Trustee shall distribute equally any remaining trust assets to my heirs at law."

(Boldface in original.)

trial court regarding Helen's intent as expressed in her will. Here, even considering the extrinsic evidence pointed to by Chad, Helen's will is unambiguous concerning her intent regarding termination of the trust and the distribution of its assets: the trust was to terminate upon the death of Tyler, with Jennifer receiving the corpus of the trust unless Jennifer predeceased Tyler. That unambiguous expression of intent is controlling. *Kidder v. Olsen*, 176 Or App 457, 464, 31 P3d 1139 (2001) ("[W]hile rules of construction and extrinsic evidence are useful to interpret the testator's intent as expressed in the will, extrinsic evidence cannot be used to contravene an otherwise clear expression of intent.").

*Second Assignment of Error.* The trial court determined that an "alternative distribution agreement" (ADA) entered into in November 2004 between Jennifer and Helen's children—Ann, Ronald, and Tyler—was valid and enforceable. The ADA was approved by the probate court in the probate case concerning Helen's estate in December 2004; it was incorporated into and attached to the January 2005 petition for a General Judgment of Final Distribution that was filed by the personal representative in that probate case; and it was incorporated into and attached to the February 2005 General Judgment of Final Distribution in that probate case.

On appeal, Chad contends that the trial court erred when it concluded that the ADA was valid because various statutes concerning modification of trusts were allegedly not followed in connection with the ADA. Specifically, Chad contends that the ADA was invalid under *former* ORS 128.177 (2003), *repealed by* Or Laws 2005, ch 348, § 128, because it was "inconsistent with any dominant purpose or objective of the Trust" and he did not sign it, and also invalid under *former* ORS 128.181 (2003), *repealed by* Or Laws 2005, ch 348, § 128, because he was "not appropriately served with the ADA or appropriately notified of his objection rights."

The difficulty with Chad's argument concerning the validity of the ADA is that the Judgment of Final Distribution in the probate case concerning Helen's estate is conclusive as to what assets were distributed to the trust under Helen's will. ORS 116.113(3) ("The judgment of final

distribution is a conclusive determination of the persons who are the successors in interest to the estate and of the extent and character of their interest, subject only to the right of appeal and the power of the court to vacate the judgment."); *see also* ORS 111.095(2) ("The determinations, orders and judgments of a probate court have the same validity, finality and presumption of regularity as those of a circuit court.").[3]

Chad also contends, however, that the Judgment of Final Distribution in the probate case concerning Helen's estate is "void" and is therefore "subject to collateral attack in a subsequent proceeding" by Chad. That argument is premised on a contention that the probate court hearing the case involving Helen's estate lacked both subject matter jurisdiction and personal jurisdiction.

We disagree with that premise. Regarding subject matter jurisdiction, the "jurisdiction of the probate court" includes "[p]robate and contest of wills."[4] ORS 111.085.[5] And regarding personal jurisdiction—assuming personal jurisdiction over Chad was required in this circumstance—Chad does not explain how failure to provide notice of the ADA under *former* ORS 128.181 (2003) means that the probate court administering Helen's estate lacked personal jurisdiction over him in connection with the probate proceeding and the final judgment therein. Further, we note that in the trial court in this proceeding, Chad contended that he did not recall receiving notice of the petition for a General Judgment of Final Distribution in Helen's probate proceeding, but the trial court did not find Chad's lack of recollection "persuasive."

---

[3] Both ORS 116.113 and ORS 111.095 were amended after the probate court administering Helen's estate entered the Judgment of Final Distribution, but because those amendments do not affect our analysis, we have quoted the current version of ORS 116.113(3) and ORS 111.095(2).

[4] We note that there is a statutory means to reopen a probate case for "proper cause." ORS 116.233 ("Upon the petition of any interested person, the court, with such notice as it may prescribe, may order the estate of a decedent reopened if other property is discovered, if any necessary act remains unperformed or for any other proper cause appearing to the court."). That is not relief that Chad pursued.

[5] ORS 111.085 was amended after the probate court administering Helen's estate entered the Judgment of Final Distribution, but because those amendments do not affect our analysis, we have quoted the current version of ORS 111.085.

*Third Assignment of Error.* The trust was governed by a trust agreement (to which Chad was a signatory) that provided that, "upon Tyler S. Northcraft's death, the assets held in trust shall be distributed to Jennifer Northcraft. Should Jennifer predecease Chad then the assets held in trust shall be distributed to Chad Northcraft." The trial court determined that, as relevant to this case, the trust agreement was valid.

In Chad's third assignment of error, he contends that the "trial court erred by determining that the Trust Agreement was valid." Specifically, pointing to *Lee v. Melone*, 19 Or App 301, 302, 527 P2d 414 (1974), and *former* ORS 128.177 (2003), Chad contends that the trust agreement is invalid because it is inconsistent with the "dominant purposes or objectives" of the trust that was created by Helen's will. In Chad's view, "it is evident that at minimum, Helen intended that Chad would be able to continue residing on the ranch, to have a hand in managing it, to share in the profits of the ranch, and to generally be provided for indefinitely, even after Tyler's death."

The trial court determined that Helen's intent, as reflected in her will, was that "the property held in trust was to be held for the benefit of Tyler, Jennifer and Chad during Tyler's lifetime," and that "[t]he rights of Tyler, Jennifer and Chad to receive income from the trust was to terminate upon Tyler's death, at which time the corpus of the trust was to be distributed entirely to Jennifer." And as the trial court observed, "for purposes of distribution of the trust estate upon Tyler's death, both [Helen's will and the trust agreement] provide that the entirety of the trust estate be distributed to Jennifer, with no provision for Chad unless Jennifer predeceases Tyler."

The trial court's determination as to Helen's intent is supported by the record, and for that reason we think defendant's argument that the trust agreement is invalid because it is inconsistent with the "dominant purposes or objectives" of the trust is misplaced. *See* ORS 112.227 ("The intention of a testator as expressed in the will of the testator controls the legal effect of the dispositions of the testator."). Instead, as determined by the trial court, we conclude

that the trust agreement is consistent with the purpose and objectives of the trust.

*Fourth and Fifth Assignments of Error.* In Chad's fourth assignment of error, he contends that the trial court should have "reformed the trust documents as requested by [Chad] *** and [made] an equitable distribution to [Chad]." *See* ORS 130.220 (authorizing the court to "reform the terms of a trust, even if unambiguous, to conform the terms to the settlor's intention if the person requesting reformation proves by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement"). In Chad's fifth assignment of error, he contends that the trial court should have imposed a "constructive trust" over the trust assets for Chad's benefit. *See McIntire v. Lang*, 241 Or App 518, 523-24, 254 P3d 745 (2011) (describing standard for imposition of a constructive trust).

The arguments in Chad's fourth and fifth assignments of error turn on Chad's position that Helen's intent was that Chad would be provided for by the trust after Tyler's death, or otherwise intended that property go directly to Chad upon Tyler's death. Having considered those arguments, we conclude that the trial court correctly determined that there was "no legal basis for awarding any portion of the property to Chad."

Affirmed.